| | |
|---|---|
| WILLY GRANADOS, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>LENDINGTREE LLC, )<br>)<br>Defendant. ) | **MEMORANDUM AND RECOMMENDATION AND ORDER** |

**THIS MATTER** is before the Court on Defendant's "Motion to Compel Arbitration and Stay Claims, or Alternatively, to Dismiss Plaintiff's Class Action Complaint," Doc. No. 9, filed November 22, 2022.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, Defendant's Motion to Compel Arbitration and Stay Claims is **GRANTED**. The undersigned respectfully recommends that Defendant's Motion to Dismiss be **DENIED**.

## I. FACTUAL BACKGROUND

Accepting the factual allegations of the Complaint as true, Defendant provides an online marketplace for various financial borrowing needs including auto loans, small business loans, personal loans, and credit cards. Doc. No. 1, at ¶ 21. Plaintiff has used Defendant's services in the past. In the process of creating an account, Defendant collects sensitive information from

users such as their full name, street address, Social Security number, and date of birth. Id. at ¶ 22. Defendant suffered a cyberattack where data thieves gained access to users' private information. Id. at ¶ 38. On June 29, 2022, it sent a Notice of Data Breach to its users. Id. at ¶ 29. The letter stated Defendant "determined that a code vulnerability likely resulted in the unauthorized disclosure of some sensitive personal information." Id. Plaintiff's private information was accessed and stolen as a result of the data breach. Id. at ¶ 41.

The files stolen during the attack contained users' names, dates of birth, Social Security numbers, and street addresses. Id. at ¶ 39. Defendant was aware of the risks of a cyberattack since it had experienced data breaches at least twice before – once in 2008 and again in January 2022. Id. at ¶ 45. It failed to properly implement basic data security practices and employ reasonable measures to protect against unauthorized access to users' private information. Id. at ¶ 51. Defendant also failed to abide by industry standards. Id. at ¶ 55.

Plaintiff alleges causes of action for negligence, negligence per se, violation of Cal. Bus. & Prof. Code § 17200, restitution, unjust enrichment, and violation of the North Carolina Unfair and Deceptive Trade Practices Act. Defendant asserts that Plaintiff is bound to arbitrate these claims in accordance with the Terms of Use he accepted when he created an account with Lendingtree.

## II. DISCUSSION

### 1. Standard of Review

The Federal Arbitration Act establishes a policy favoring arbitration. The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to stay proceedings and compel arbitration in the event of a refusal to comply with a valid

2

Case 3:22-cv-00504-MOC-DSC   Document 15   Filed 02/02/23   Page 2 of 8

agreement to arbitrate. 9 U.S.C. § 3. The Supreme Court has described the FAA as "a liberal federal policy favoring arbitration." AT&T Mobility, LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citation omitted). Furthermore, the Supreme Court has held that "courts must rigorously enforce arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2309 (2013) (internal quotation omitted).

District Courts "should apply the summary judgment standard to evaluate motions to compel arbitration under the FAA." Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021) (collecting cases). Under the summary judgment standard, "the court must construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Id. Further, "if the non-moving party puts forward materials that create a genuine issue of fact about a dispute's arbitrability, the district court 'shall proceed summarily' to trial to resolve that question.'" Id. (citing 9 U.S.C. § 4; Neb. Mach. Co., Inc. v. Cargotec Sols., LLC, 762 F.3d 737, 744 (8th Cir. 2014)).

A court must compel arbitration if "(i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." Chorley Enter., Inc. v. Dickey's Barbecue Rest., Inc., 807 F.3d 553, 563 (4th Cir. 2015). In deciding whether the parties have an enforceable agreement to arbitrate, courts apply state law principles governing the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960); see also AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 648 (1986); Johnson v. Cir. City Stores, Inc., 148 F.3d 373, 377 (4th Cir. 1998); Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997). "If a contract contains

3

an arbitration clause, 'a presumption of arbitrability exists,' and there must be 'positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Doubts are resolved in favor of coverage." Krueger v. Angelos, 26 F.4th 212, 217 (4th Cir. 2022) (citing AT & T Technologies, 475 U.S. at 650).

### a. Validity of the Agreement

Agreements as to terms and use when accessing websites can take three forms: clickwrap, browsewrap, or sign-in wrap. Colgate v. JUUL Labs, Inc., 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019). A sign-in wrap agreement, such as the one here, is where "a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service." Id.

Courts have enforced web browser contracts "where the user had actual or constructive knowledge of the site's terms and conditions, and manifested assent to them." Melo v. Zumper, Inc., 439 F. Supp. 3d 683, 697 (E.D. Va. 2020) (internal quotation marks, citation, and alteration omitted). "As long as the hyperlinked text was itself reasonably conspicuous . . . a reasonably prudent smartphone user would have constructive notice of the terms. While it may be the case that many users will not bother reading additional terms, that is the choice the user makes; the user is still on inquiry notice." Meyer v. Uber Techs., Inc., 868 F.3d 66, 79 (2d Cir. 2017). Constructive notice only requires that "the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." Melo, 439 F. Supp. 3d at 967 (internal quotation marks and citation omitted).

At the time Plaintiff created an account, Defendant required users to acknowledge and agree to be bound by its Terms of Use agreement. Doc. No. 9-1, at ¶ 5. It also required users that submitted consumer loan searches to click a button accompanied by text stating the user

4

"consent[s], acknowledge[s] and agree[s]" to Defendant's Terms of Use. Id. If a user failed to agree to the terms, Defendant would not allow them to create an account or use its services. Id. The Terms of Use contained an arbitration provision, which provides, "YOU AGREE THAT ANY DISPUTE BETWEEN YOU AND US, INCLUDING WITHOUT LIMITATION DISPUTES RELATING TO THE WEBSITES, CONTENT OR SERVICES ("DISPUTES"), SHALL BE FINALLY AND EXCLUSIVELY RESOLVED BY BINDING INDIVIDUAL ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") IN ACCORDANCE WITH ITS CONSUMER ARBITRATION RULES." Id. at ¶ 6 (emphasis in original); see also Doc. No. 9-2, at 5–6.

Plaintiff argues that there is not a binding contract between the parties because he did not "fully and clearly" comprehend that there was an agreement to arbitrate. Doc. No. 13, at 10. He further attests that he never saw the Terms of Use that included the arbitration clause and thus lacked actual or inquiry notice. Id.; see also Doc. No. 13-2, at ¶ 4. He argues that "[t]he Terms of Use are hidden at the bottom of the page, just past the point where you need to scroll down to create an account, below a thicket of green ads, in the smallest font on the screen." Doc. No. 13, at 11; see also Doc. No. 13-1, Exs. 1–2.[1] He states that no reasonable consumer would have seen it as there is no reason to scroll down the page after seeing the "Create Account" tab. Doc. No. 13, at 12.

Plaintiff concedes that Defendant included a provision below the "Create Account" tab stating that the consumer agreed to abide by the Terms of Use. He primarily relies on the font, location, and size of the terms to defeat constructive notice. Plaintiff further asserts that a consumer would have to "affirmatively search for the hyperlink to even know it existed." Doc.

---

[1] Defendant argues that Plaintiff relies on the current sign-up process that had not been implemented at the time he created an account. That does not affect the analysis or outcome here.

5

No. 13, at 8. But Defendant's notice of assent was in nine-point Arial font with a hyperlink to the Terms of Use. It also required users to agree to the terms when they submitted a consumer loan search. Plaintiff had multiple opportunities to read and decline the terms if he chose. This is not the needle in a haystack search that Plaintiff depicts. "[I]gnorance of the precise terms does not mean that consumers are unaware they are entering contracts by signing up for internet-based services." Melo, 439 F. Supp. 3d at 698 (internal quotation marks, citation, and alteration omitted). Rather, a reasonable consumer creating an account and submitting a loan search would have been aware of the Terms of Use. For those reasons, Defendant's Motion to Compel Arbitration and Stay Claims is granted.

### b. Scope of the Arbitration Provision

The Supreme Court has held that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, [the C]ourt may not override the contract." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019). Even if the Court determines that an arbitration provision is enforceable, "it possesses no power to decide the arbitrability issue." Id. Where the parties have contracted for an arbitrator to decide the issue of interpretation, the "Court must defer to the arbitrator as to the question of the arbitration provision's scope." Heidbreder v. Epic Games, Inc., 438 F. Supp. 3d 591, 597 (E.D.N.C. 2020).

The Terms and Use agreement expressly provides that the user "agree[s] that any dispute or disagreement regarding the enforceability, applicability, or interpretation of any provision of this Agreement, including the provisions regarding dispute resolution and arbitration, is a Dispute subject to the arbitration provisions herein and shall be resolved by an arbitrator." Doc. No. 9-2, Ex. A, at 6 (emphasis added). The issue as to whether the data breach is within the

scope of the arbitration provision must be resolved the arbitrator. For those reasons, Defendant's Motion to Compel Arbitration and Stay Claims is granted.

## ORDER

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay Claims is **GRANTED**.

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Defendant's Motion to Dismiss be **DENIED**.

## NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315–16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Synder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845–46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to the parties' counsel and to the Honorable Max O. Cogburn, Jr.

**SO ORDERED AND RECOMMENDED.**

Signed: February 1, 2023

David S. Cayer
United States Magistrate Judge